# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 2078 | DATE | 6/25/2004 |
| CASE TITLE | American Motorists Insurance Company v. Stewart Warner Corporation | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Stewart Warner's Motion for Reconsideration of the Court's May 17, 2004 Order (doc. # 50)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Stewart Warner's motion for reconsideration is DENIED. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 53 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | date mailed notice | |

2004 JUN 25 PM 1:40
U.S. DISTRICT COURT

Date/time received in Central Clerk's Office / mailing deputy initials


| | |
|---|---|
| AMERICAN MOTORISTS INSURANCE COMPANY, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>STEWART WARNER CORPORATION )<br>)<br>Defendant. ) | No. 01 C 2078<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Stewart Warner ("SW") asks this Court to reconsider its May 17, 2004 decision granting summary judgment to American Motorists Insurance Company ("AMICO").[1] Motions for reconsideration are proper only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). SW's motion for reconsideration, however, amounts to the argument that its cases are better and more persuasive than the cases the Court relied upon. SW claims that this Court erred in holding that AMICO had no duty to indemnify SW. Contrary to SW's claims, this Court properly considered the law and applied it to the facts of this case.

### I. AMICO Insurance Policies that Included Duty to Defend and Duty to Indemnify Provisions

SW does not dispute the Court's holding that AMICO does not owe a duty to defend to SW. SW does, however, dispute the Court's holding that the absence of a duty to defend precludes

---

[1] For a complete statement of facts, see the Court's previous Memorandum and Order, *Am. Motorists Ins. Co. v. Stewart Warner Corp.*, No. 01 C 2078, 2004 WL 1146707 (N.D. Ill. May 18, 2004).

1

53

AMICO's duty to indemnify. In making its decision, the Court relied upon *Zurich Ins. Co. v. Carus Corp.*, 293 Ill. App. 3d 906, 689 N.E.2d 130 (1st Dist. 1997), which involved an insurance contract with very similar indemnity and defense provisions as in the instant case. In *Zurich*, the Illinois Appellate Court held that the insurer owed no duty to indemnify where it owed no duty to defend, even though the duty to indemnify provisions were not limited to "suits" in the same way that the duty to defend was limited. *Id.* at 133, 909-10. The holding in *Zurich* is consistent with the Illinois Supreme Court's holding that "where there is no duty to defend, there will be no duty to indemnify." *Zurich*, 293 Ill. App. 3d at 909, 689 N.E.2d at 133 (quoting *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398, 620 N.E.2d 1073 (1993)). *See also Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204, 1220 (1992) (duty to defend is broader than duty to indemnify).

This Court considered, but declined to rely upon the cases with contrary holdings – *Vogue Tyre & Rubber Co. v. Cigna Prop. & Cas. Ins. Co.*, No. 96 C 4864, 1998 WL 801786, on reconsideration, 1999 WL 33117273 (N.D. Ill. Feb. 11, 1999), and *Central Illinois Light Co. v. Home Ins. Co.*, 342 Ill. App. 3d 940, 795 N.E.2d 412 (3rd Dist. 2003). Those cases held that the insurer was legally obligated to indemnify the insured's environmental remediation costs even in the absence of a duty to defend. In its opinion, the Court explained why it chose to follow *Zurich* over *Central Illinois*, and the Court stands by this reasoning. *Zurich* comports with Illinois Supreme Court precedent in *Crum* and *Outboard Marine*, while *Central Illinois* does not. The Court chose not to discuss *Vogue Tyre* in its opinion because *Vogue Tyre* contained no explanation as to why it declined to follow *Zurich*, and the Illinois Appellate Court's opinion is more persuasive to the Court's analysis under Illinois law than an unpublished Northern District of Illinois case.

2

## II. AMICO Insurance Policies that Included Only Duty to Indemnify Provision

SW is correct, however, that in the Court's memorandum and order, the Court erroneously stated that every general liability insurance contract issued by AMICO to SW between 1965 and 1988 contains language that limits AMICO's duty to defend to when a lawsuit is filed against SW. In actuality, the AMICO primary policies from June 1, 1979 through January 1, 1988, do not contain a duty to defend provision. This factual error, however, does not change the outcome of this case. In *Northern Illinois Gas v. Home Ins. Co.* ("*NiGas*"), the Illinois Appellate Court refused to distinguish its holding in *Zurich*, even though an indemnity-only policy was at issue in *NiGas* and the policy contained no language requiring that a suit be brought against the insured before the insurer has a duty to indemnify. 334 Ill. App. 3d 38, 46, 777 N.E.2d 417, 423 (1st Dist. 2002). The appellate court held that *Zurich* based its holding not only on the policy provision that a duty to defend arises only when a "suit" is filed, but also on the fact that the insured never became "legally obligated to pay" its investigation and remediation costs. *NiGas*, 334 Ill. App. 3d at 46, 777 N.E.2d at 423. The AMICO policies, like the policies at issue in *NiGas*, contained the language that AMICO would indemnify SW for such costs as it was "legally obligated" to pay: "all sums which [SW] shall become legally obligated to pay as damages . . ."

"The duty to indemnify arises when the insured becomes 'legally obligated' to pay damages in the underlying action that gives rise to a claim under the policy. One does not become legally obligated until a judgment or settlement is reached between the parties." *Guillen v. Potomac Ins. Co. of Illinois*, 323 Ill. App. 3d 121, 132, 751 N.E.2d 104, 114 (1st Dist. 2001) (citing *Douglas v. Allied Am. Ins.*, 312 Ill. App. 3d 535, 541, 727 N.E.2d 376, 381 (5th Dist. 2000)). In *NiGas*, the appellate court held that although the policies in *Guillen* and *Douglas* contained a duty to defend as

3

well as a duty to indemnify, and the *NiGas* policies concerned the duty to indemnify only, an insurer's duty to indemnify the insured for all sums the insured "shall be obligated to pay by reason of liability imposed upon the [insured] by law for damages" was triggered by a judgment rendered by a court. *NiGas*, 334 Ill.App.3d at 55, 777 N.E.2d at 429-30.

SW's attempts to distinguish itself because the EPA issued a corrective action order against it are to no avail. Although in *Zurich* and *NiGas* the insured had "voluntarily" begun remediation of the contaminated site, in the instant case, SW initially negotiated a voluntary agreement with the EPA ("Corrective Action Agreement" or "CAA"), but then chose to unilaterally discontinue its performance of the obligatory cleanup tasks under the CAA. As a result, the EPA issued an administrative order ("Corrective Action Order" or "CAO") very similar to the original voluntary agreement, which was subsequently renegotiated with SW. SW admits that it terminated the CAA specifically to avoid AMICO's characterization of it as "voluntary." Allowing SW's unilateral action to change the nature of SW's cleanup obligation, and AMICO's resulting obligation to indemnify, would perversely encourage insureds not to cooperate to cleanup contaminated sites. This is similar to the situation deplored by the Seventh Circuit in *Wisconsin Power & Light Co. v. Century Indem. Co.*:

> The utility is thus claiming a right to transform response costs into legal damages by sheer stonewalling. If the utility flouts its duty to clean up a contaminated site, forcing others who bear that duty to sue it for its fair share of the expense, and as a result is able to shift that cost from its own shoulders to those of its insurers, the consequence is to reward wrongdoing. That is something insurance contracts are never interpreted to do.

130 F.3d 787, 792 (7th Cir. 1997). Therefore, AMICO's duty to indemnify was not triggered in the policies that do not contain a duty to defend.

4

## III. Additional Reasons AMICO's Duty to Indemnify Was Not Triggered

Furthermore, SW's unreasonably late notice of the claims against it violates explicit conditions precedent in the AMICO policies. AMICO's general policies state that "[i]f a claim is made . . . against the insured, the insured shall immediately forward to [AMICO] every demand, notice, summons, or other process received by him or his representative." The policies also state that "[n]o action shall lie against [AMICO] unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy . . ." The excess policies also require notice as soon as practicable of occurrences likely to involve indemnity under the policy. Notification requirements in insurance policies are valid conditions precedent to coverage under Illinois law that may relieve the insurer of indemnity obligations under the policy. *See, e.g., Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 313 Ill. App. 3d 457, 729 N.E.2d 915 (1st Dist. 2000). A delay of a few months may be a breach of notice provisions as a matter of law. *See Equity Gen. Ins. Co. v. Patis*, 119 Ill. App. 3d 232, 456 N.E.2d 348 (1st Dist. 1983) (four and one-half months); *Ill. Valley Minerals Corp. v. Royal Globe Ins. Co.*, 70 Ill. App. 3d 296, 388 N.E.2d 253 (3rd Dist. 1979) (six months). The insurer need not prove prejudice for breach of the notice condition to bar coverage, unless the insured had a good excuse for the late notice or its delay in giving notice was short. *Twin City Fire Ins. Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 639 N.E.2d 584, 589 (1st Dist. 1993).

In this case, AMICO received notice of the USEPA claim against SW nearly eleven months after the USEPA's initial claim letter to SW, and AMICO received notice of the Eli Lilly claim nearly three months after SW received Lilly's claim letter. The eleven-month time period is unreasonable because the insurance policy requires "immediate" notice, or notice "as soon as

5

practicable," and SW provides no excuse for its delay. *See Patis*, 456 N.E.2d 348; *Royal Globe*, 388 N.E.2d 253. SW argues that AMICO may have received "actual notice" of the USEPA claim before SW notified AMICO of the claim. After an opportunity for extensive discovery, however, the allegation that AMICO might have found out about the claims from another source, without any evidence of this, is not sufficient to create an issue of fact. Furthermore, SW's notice to AMICO of the Lilly claim does not amount to notice of the USEPA claims simply because the claims refer to the same site and one AMICO employee said he views the separate claims as one claim. There were different consequences for each claim that the insurer had to investigate.

The nearly three-month delay after receipt of the Lilly claim letter, however, is not sufficient to declare the delay "unreasonable" as a matter of law. *See, e.g., St. Paul Mercury Ins. Co. v. Statistical Tabulating Corp.*, 155 Ill. App. 3d 545, 508 N.E.2d 433, 438 (1st Dist. 1987) (three months reasonable). Nevertheless, the pollution exclusions in AMICO's policies relieve AMICO of the duty to indemnify SW here. The duty to indemnify only arises if the insured's activity and the resulting damage actually fall within AMICO's policy's coverage. *See Outboard Marine*, 154 Ill. App. 3d at 126-28, 607 N.E.2d at 1221.

From 1979 to 1985, AMICO's insurance policy contained a "sudden and accidental" exclusion, and in its policies from 1986 through January 1, 1988, the AMICO policy contained an absolute pollution exclusion. Under the "absolute" pollution exclusion, the policy stated that the insurance does not apply to "bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants," or to "any loss, cost or expense arising out of governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants." Illinois courts have held that such an

6

exclusion precludes coverage for claims of traditional environmental pollution or contamination. *Am. States Ins. Co. v. Koloms*, 177 Ill. 2d 473, 687 N.E.2d 72 (1997); *Kim v. State Farm Fire and Cas. Co.*, 312 Ill. App. 3d 770, 728 N.E.2d 530 (1st Dist. 2000). The VOC-laden chemicals or solvents that were released from SW's site and led to the claims at issue are pollutants within the scope of the absolute pollution exclusion.

The standard pollution exclusion in the policies from 1979 to 1985 states that the policy does not apply "to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental." Thus, the policy bars coverage for property damage which arises out of releases or discharges of pollution unless the discharge or release was both "sudden and accidental." "The relevant consideration here is whether the insured expected and intended to discharge the particular toxic it is alleged to have discharged and for which it now seeks coverage." *Outboard Marine*, 154 Ill. App. 3d at 129, 607 N.E.2d at 1222. If SW's release of VOC-laden chemicals or solvents was expected and intended, the "sudden and accidental" exception to the pollution exclusion clause does not apply, and SW's loss is not covered.

In its memorandum and reply in support of its motion for summary judgment, AMICO points to the testimony of SW employees, Sterling and Hynes, the only sources of factual testimony concerning the history of pollution releases and discharges at the site. Sterling testified in his deposition that he was aware of "repeated incidents of improper intentional disposal of VOC-laden chemicals or solvents," and he caught employees on multiple occasions improperly disposing of

7

them. Hynes' testimony did not contradict that of Sterling; he merely admitted that he did not personally witness everything that Sterling talked about. In addition, the testimony shows that the spills occurred with regularity, such that SW must have expected the solvent releases and discharges under Illinois law. *See Fruit of the Loom v. Travelers Indem.*, 284 Ill. App. 3d 485, 672 N.E.2d 278 (1st Dist. 1996) (spills were expected as they were ordinary and recurring parts of the business). SW even admits in its response brief that it "regularly experienced and endeavored to deal with discharges and releases" of solvents. SW has not presented evidence to contradict this.

Moreover, it is not important if SW did not expect or intend the contamination of soil and groundwater beneath its site and Lilly's property, because the pollution exclusion applies to an expectation of releasing the contaminant, not to an expectation of the specific damage that the pollution will cause. *Outboard Marine,* 154 Ill. App. 3d at 129, 607 N.E.2d at 1222. In addition, "[t]o interpret the personal injury section to provide coverage for environmental damage . . . would render the pollution exclusion a nullity." *Millers Mut. Ins. v. Graham Oil Co.*, 282 Ill. App. 3d 129, 668 N.E.2d 223 (2nd Dist. 1996). Therefore, neither the Lilly nor the USEPA claim triggered AMICO's duty to indemnify.

## IV. Conclusion

For all of the above reasons, SW's motion for reconsideration is DENIED.

IT IS SO ORDERED.

6/25/04
Dated

The Honorable William J. Hibbler
United States District Court

8